UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


**DENNIS R. and S. IMANI WOULLARD**
**individually and on behalf of those similarly situated**                    **PLAINTIFFS**

**v.**                                          **CIVIL ACTION NO.1:06cv1057 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY**                    **DEFENDANT**


### ORDER ON MOTION FOR PRELIMINARY CLASS CERTIFICATION AND FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

The Court has before it the motion [25] of the plaintiffs to certify a plaintiff class pursuant to F.R.Civ.P. 23(b)(1)(A) and 23(b)(1)(B) and to give preliminary approval to a proposed settlement agreement.  The Court also has before it the motion [20] of the defendant for Preliminary Approval of Proposed Class Action Settlement.  The relevant documents are attached as exhibits to the plaintiffs' memorandum [26] in support of these motions.  For the reasons set out below, these motions [20] [25] will be denied without prejudice.

The proposed class consists of all State Farm Fire and Casualty Company's (State Farm) policyholders who insured property in Jackson, Harrison, and Hancock Counties, Mississippi, and who had coverage in effect at the time of Hurricane Katrina.  The plaintiffs have identified eleven types of policies that would be covered by this action.  The plaintiffs' proposed class excludes the holders of policies that contain a wind damage exclusion, the holders of policies covering only flood damages, policyholders who have concluded mediation proceedings with State Farm and signed a release, and policyholders who have heretofore filed lawsuits against State Farm.

The plaintiffs have alleged that "many hundreds, if not thousands, of individuals and/or entities have asserted claims or have potential claims" against State Farm.  Neither the plaintiffs nor State Farm has given the Court any information from which the Court can determine with any reasonable degree of certainty how many policyholders are within the proposed class or how many policyholders have each of the eleven types of policies identified.  Thus there is insufficient information to make a finding concerning numerosity.

There is also insufficient information to support a finding that the plaintiffs, who are presumably owners of a State Farm homeowners policy, have a claim that is substantially similar to claims under the other ten categories of policies covered by the proposed settlement agreement. Thus there is insufficient information in the record to support a finding of commonality, typicality, and the adequacy of the plaintiffs to represent the interests of the proposed class.

The types of losses sustained by the proposed class members (under all eleven types of policies) have been divided into five basic categories listed in Exhibit One, the Mississippi Katrina Resolution Guideline Tool (MKRGT):

1. Foundation and pier only sites (a/k/a slab cases) defined as the absence of structure on the site of the insured property;

2. Total/Constructive Total Damaged Structures defined as properties with damage to the insured structure equal to or greater than 60% of its insured value;

3. Severe Damaged Structures defined as properties with damage to the insured structure between 30% and 60% of its insured value;

4. Moderate Damaged Structures defined as properties with damage to the insured structure between 10% and 30% of its insured value; and

5. Minor Damaged Structures defined as properties with damage to the insured structure equal to or less than 10% of its insured value.

The parties have not given the Court any information from which the Court can determine the extent of claims and the extent of coverages for each of these five categories with any reasonable degree of certainty. Nor have the parties submitted any information concerning the face value or potential extent of the coverage held by the members of the proposed class.

The plaintiffs have the burden of proof as to all the essential elements of a class action under F.R.Civ.P. 23. The Court has heretofore declined to certify class actions in Katrina cases on the grounds that these criteria were not met. There is no evidence before me that would compel a different conclusion in this action.

The MKRGT guarantees a minimum recovery only for the first category of claims (slab cases). The minimum guaranteed recovery for slab cases is 35% of the structure coverage (Coverage A) applicable to the insured building and 6.67% of the contents coverage (Coverage B) applicable to the insured personal property. These minimum guarantees are subject to an overall limit discussed below. The MKRGT also establishes a guideline to be used in calculating damages for loss of use of the insured

property.  I have been unable to find the policy provisions that support the guidelines for loss of use.

The MKRGT makes no guarantee of any minimum recovery to the other four categories of claims.  The MKRGT establishes guidelines of "up to" stated percentages for damage to buildings and personal property in these other four categories.  The guideline percentages for damage to buildings range from 11% to 2%, and the percentages for personal property range from 2% to 0.25%.  All of these percentages are subject to the maximum recovery discussed below.  No additional criteria have been identified for evaluating the proposed class members' claims.  There is no evidence that State Farm will evaluate the class members' claims in any way different from the way these claims have already been evaluated by State Farm in the past adjustment process for these claims.

The proposed settlement agreement establishes certain absolute limits on class members' potential recoveries that may be inconsistent with my prior rulings.  The agreement provides that the ceiling on claims for damage to buildings would be the difference between the limits of coverage for the insured buildings (Coverage A) and the amount of coverage collected for the insured buildings under a class member's separate flood insurance policy (or any other type of insurance policy), if the insured has purchased and collected such separate coverage.  A similar provision establishes this difference between coverages as the absolute limit of contents coverage.  The agreement does not provide for any exception for situations in which the fair market value or the actual cash value of the insured property is equal to or greater than the combined limits of flood coverage and the coverage limits in the State Farm policies.  Under the proposed agreement, the insured owner of a property worth $100,000 who insured the property against $50,000 in wind damage and $50,000 in flood damage, and who has collected his flood insurance benefits, would not be entitled to any recovery even if only a slab remained.  In such a scenario, outside the proposed settlement agreement, an insurer would not be entitled to offset limits against limits, thereby depriving the insured of the benefit of the separate contracts the policyholder has purchased.  The wind insurer would be entitled to a credit for the $50,000 in flood coverage collected, but that credit would be measured against the total value of the insured property, not the limits of the wind insurance policy.  The plaintiffs have offered no justification or rationale for this provision of the settlement agreement.

The proposed settlement agreement proposes an opt-out class, but the proposed procedure does not make opting out easy.  The proposed notice of the settlement does not provide a box that can be checked off if a policyholder wishes to be excluded from the class, but requires instead that the insured write a separate letter requesting exclusion from the class. (Paragraph 8.8 of the Proposed Agreement of Compromise and Settlement) By returning the Katrina Registration Form, the class member becomes subject to the terms of the proposed settlement agreement, even if he later decides he wishes to opt out of the process.

The proposed agreement contemplates a two-step procedure for the submission of claims and supporting data by the class member (submission of a Katrina Registration Form giving notice of the class member's election to participate in the proposed settlement and the submission of a Katrina Resolution Form that contains a statement under oath and allows for the attachment of documentation in support of the claim). The Katrina Registration Form indicates that a class member has two alternatives: he may indicate that he wishes to participate, or he may indicate that he wishes to participate on an accelerated basis. The form does not give the class member the alternative of being excluded from the class. In order to avoid being included in the class and to avoid being bound by the provisions of the proposed settlement agreement, a member of the proposed class must take certain specified steps to opt-out, within a short time-frame, and he undertakes those steps at the peril of being involuntarily included in the class if he errs.

The proposed settlement agreement provides for a blanket release of all potential claims for extra-contractual damages, broadly defined in Paragraph 2.37 of the Proposed Agreement of Compromise and Settlement. The parties who are released from all liability include not only State Farm, but also all corporations related to State Farm, all those who represented State Farm in the adjusting of claims, and all of State Farm's local agents. The proposed settlement agreement establishes no compensation of any kind for the nullification of these potential claims.

The proposed settlement agreement establishes a claims handling procedure that is under the indirect control of State Farm. The proposed settlement agreement contemplates State Farm's participation in the selection of the Special Master, a choice that is exclusively within the prerogative of the Court. The proposed agreement also allows State Farm to train the arbitrators, control much of the administrative process, and control the compensation of all those involved in the administration of claims. This arrangement has the potential of allowing State Farm to exert a substantial measure of control over the claims resolution process without oversight by any independent or neutral authority. Any alternative claims resolution procedure must give the parties finality, but the integrity of the procedure must be assured by meaningful Court supervision. A Special Master appointed by the Court must be authorized to exercise effective control over all aspects of the claims resolution process lest the parties lose confidence that their claims are being resolved by a truly independent arbitrator.

Using the figures set out in the MKRGT, the settlement agreement requires that State Farm make an offer of settlement in response to the information in the Katrina Resolution Form. The proposed settlement agreement establishes no criteria that will be used to formulate this offer, although relevant information such as the age and the quality of construction for the insured property may be taken into consideration. (Paragraph 8.4.3 of the Proposed Agreement of Compromise and Settlement) Presumably, this is precisely the information State Farm has already taken into consideration in investigating and adjusting the claims of the class members.

If a class member deems the State Farm offer unacceptable, the class member may request binding arbitration, but the class member is foreclosed from pursuing any other legal remedy.  The arbitration procedure is limited to a maximum of two hours, and the decision of the arbitrator is final.  There is no right of appeal, and there is no right of review with respect to the legal standards or evidentiary standards used by the arbitrator.  The agreement makes no provision concerning the disposition of a claim in the event the class member rejects the State Farm offer and fails to request arbitration.  The proposed settlement even provides that an arbitrator may award an amount that is less than State Farm's offer.

The proposed settlement identifies Poorman-Douglas Corporation as the proposed claims administrator.  The proposed settlement agreement provides that State Farm and Poorman-Douglas "may enter into contracts to provide for the sharing of the database and to protect the confidentiality of State Farm's confidential business information."  The parties to the proposed settlement agreement have presented no evidence to establish the competence and impartiality of Poorman-Douglas. (Paragraph 8.13.6 of the Proposed Agreement of Compromise and Settlement)

The proposed settlement agreement provides for the use of arbitrators listed in Exhibit Ten.  These arbitrators will be given some unspecified type of training prior to undertaking to act as arbitrators. (Paragraph 8.14.3 of the Proposed Agreement of Compromise and Settlement)  The plaintiffs have given the Court no information concerning the substance of this training, and the proposed agreement makes no provision concerning potential conflicts of interest that may arise during the claims and arbitration process.

Class Counsel does not undertake to assist or represent any of the individual class members in pursuing a claim under the procedure established in the proposed settlement agreement.  The proposed settlement agreement contemplates minimum attorneys' fees for Class Counsel of $10,000,000 with a maximum of $20,000,000.  The plaintiffs have offered the Court no information concerning the basis for the calculation of this proposed fee arrangement.  Any class member who wishes to be represented by counsel must find and retain his own counsel and must pay the separate attorneys' fees he will incur.

As the plaintiffs have correctly pointed out in their motion, this Court has, for the past year and a half, sought to establish, for the cases in litigation under the Court's jurisdiction, procedures which would lead to fair, reasonable, and just results for both the policyholders and the insurers affected by Hurricane Katrina.  The proposed class action addresses only claims which are not presently in litigation.  There are provisions that would allow a State Farm policyholder who has filed a lawsuit to opt into the proposed claims procedure, but the terms of the proposed settlement, particularly the percentages established by the MKRGT, are unlikely to be attractive to many litigants.

The Court recognizes and appreciates the efforts of all the individuals who participated in negotiating the proposed agreement. The problem of reaching a just, fair, and reasonable resolution of the property damage claims generated by Hurricane Katrina apply as much to the State Farm claims in litigation as to those claims which have not resulted in lawsuits. To be a true global settlement, any proposed arrangement should take all of the State Farm claims into consideration, and such a settlement agreement should represent a realistic compromise that both parties will find attractive. It would be wise for the parties who have proposed the current class settlement to broaden the scope of the settlement discussions to include the representatives of those parties currently engaged in litigation. These claimants' representatives, including Class Counsel, have obtained many rulings on issues of law that must now be taken into consideration in negotiating a reasonable compromise that may resolve a substantial portion of the total claims. The just, fair, and reasonable procedure contemplated by my prior remarks must be balanced enough to command the respect, if not the concurrence, of knowledgeable counsel in these cases, and I am of the opinion that a full and free opportunity to comment on any proposed global settlement should be permitted to all interested parties and their representatives.

I am unable to conclude, on the basis of the record now before me, that the proposed settlement agreement establishes such a procedure. I have the following concerns that lead me to this conclusion:

1. Although State Farm has made a commitment to pay at least $50,000,000 under the procedures outlined in the proposed settlement agreement, there is no way I can ascertain how this sum compares to the total claims of the members of the proposed class. Nor can I fairly estimate, with even a minimum degree of accuracy, how thinly this large sum may be spread among the class members. In these circumstances, I am not only unable to make a valid finding concerning the essential element of numerosity, but I am also unable to make even a rudimentary estimate of the amount the class members are likely to receive from the sum State Farm has committed to the settlement of the class members' cases.

2. I am concerned with the complexity of the claims procedure, especially in light of the fact that Class Counsel has made no commitment to assist or represent any of the class members in pursuing claims under the proposed settlement agreement. My review of the proposed settlement agreement has consumed considerable time, even with the resources at my disposal, and it appears to me that a lay person confronted with this claims procedure will likely be unable to participate effectively without the assistance of counsel.

3. I have no evidence of any kind in the record which would allow me to determine what work Class Counsel has performed to earn even the substantial minimum fee set out in the proposed settlement agreement.

4. I am uncomfortable with the issue of fairness in connection with the abrogation of many potential claims now held by the class members without any compensation for the surrender of those potential claims.

5. I am struck by the lack of any guaranteed payment to any class members other than policyholders left only with a slab or pilings. Even these "guaranteed" payments may be obviated by an offset of policy limits by other insurance. The percentages established as guidelines by the MKRGT are not justified or explained by any data submitted in support of the proposed settlement. Thus I have no way of making a determination how these figures were arrived at and indeed whether they are not just arbitrary amounts established without any factual support. The plaintiffs have submitted no information from which I may determine whether the figures proposed for the MKRGT are fair and reasonable.

6. I am also uncomfortable with the concept of sending a large number of policyholders into the process of binding arbitration when none of these individuals has ever agreed to participate in that procedure. Binding arbitration involves substantial reductions in the rights of the parties and in the procedural protections of due process. Requiring the members of the proposed class to arbitrate their claims would necessarily result in a diminution of the procedural safeguards these individuals and other entities presently enjoy. The proposed process would result in the loss of a right to trial by jury, the right to present any extra-contractual claims the class members may have, and the loss of the right to seek a declaration of the rights of the class members under their State Farm policies. Requiring binding arbitration for this potentially large group of policyholders who have not invoked the jurisdiction of the Court or sought affirmative relief of any kind must carry substantial corresponding potential benefits for those policyholders. It should be clearly understood, however, that binding arbitration in some form may provide an acceptable alternative to litigation. Once negotiations have failed, once the parties have unsuccessfully attempted to resolve their claims through non-binding mediation, each case must be resolved by some means. Binding arbitration offers one option.

7. The proposed agreement expressly prohibits a declaratory judgment with respect to the interpretation of the State Farm policy provisions. This provision raises the Court's concern with the continued pursuit of an appeal and a cross-appeal in *Tuepker v. State Farm*. This concern arises because the appeals appear to be inconsistent with the prohibition of a declaratory judgment in the settlement procedure. In addition, the proposed agreement states that state court decision will govern the claims procedure, but there is no mention of the relevant federal court decisions. Since the law relevant to the issues in all of these cases is based upon the decisions of both the state courts and the federal courts, I can see no justification for excluding federal court decisions from the settlement process. I will certainly never approve of any procedure that does not honor the decisions of both state and federal courts on relevant points of law, and I will

      never approve a procedure that would allow the resolution of claims under standards that are, or may be, different from or contrary to this Court's prior rulings.

8.     I am very concerned with the proposed settlement's provisions limiting the right of other litigants (and their representatives) who are not members of the proposed class to express their views on the fairness of the proposed settlement.

9.     I am also very concerned that the resolution of the state court actions brought by the Mississippi Attorney General purports to incorporate or rely upon an arbitration program administered by this Court. There is currently no such procedure in place, and there may never be such a procedure unless I am satisfied that basic standards of fairness are met.

      In the absence of substantially more information than I now have before me, I am unable to say, even preliminarily, that the proposed settlement establishes a procedure that is fair, just, balanced, or reasonable.

      Accordingly, the plaintiffs' Motion To Certify Class and for Preliminary Approval of the Proposed Agreement of Compromise and Settlement [25] and the defendant's Motion for Preliminary Approval of Proposed Class Action Settlement [20] are hereby **DENIED**. This denial is without prejudice to the right of the plaintiffs to renew their motion at such time as the plaintiffs are in a position to address the concerns expressed in this opinion, support their motion by evidence sufficient to meet the requirements of F.R.Civ.P. 23, and demonstrate that the proposed settlement is in the best interests of the members of the class they undertake to represent.

      **SO ORDERED** this 26th day of January, 2007.

s/ L. T. Senter, Jr.
L. T. Senter, Jr.
Senior Judge