UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DENNIS R. and S. IMANI WOULLARD**                                      **PLAINTIFFS**

v.                                              **CIVIL ACTION NO.1:06cv1057 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY**                **DEFENDANT**

**ORDER SETTING HEARING ON
ISSUES RELATED TO CERTIFICATION OF A SETTLEMENT CLASS**

       The parties have informed the Court that it is their intention to renew their efforts to obtain certification of a settlement class and to address the issues raised by the Court's January 26, 2007, order denying preliminary approval of the terms of the proposed class action settlement. In order to clarify the substantive issues related to this proposed class action settlement, I am hereby scheduling a hearing on Wednesday, February 28, 2007, at 1:30 p.m. to give the parties an opportunity to provide additional information in support of the relief they have requested. The hearing will be held in the courtroom on the fifth floor adjacent to my chambers.

       The parties should be prepared, at the time of the hearing, to address the following issues and to provide the information necessary to satisfy the concerns I expressed in my January 26, 2007, order:

    1.    **Numerosity**. I am interested in knowing how many claims will potentially fall within the proposed class settlement. Public remarks concerning the proposed settlement have suggested that this figure may be as high as 35,000 or as low as 8,000. None of these public remarks and none of the documents submitted thus far in support of the motion for class certification have provided enough reliable information to allow me to ascertain: a) how many State Farm policyholders (and how many potential claims) will be included in the proposed class; b) how many of these potential class members hold each of the eleven types of policies the parties propose to include in the settlement class; and c) how much the coverage for these claims totals for each type of policy.

2. **Typicality**.  I am interested in having the information that supports the parties' conclusion that the named plaintiffs' claims are typical of those that the parties intend to include within the proposed class.  If I am correct in my assumption that the named plaintiffs have a State Farm homeowners policy, I would like to know how the parties have reached the conclusion that these individuals are in a position to represent policyholders of the other ten types of policies included in the settlement.

3. **Adequacy of Representation**.  I am interested in determining exactly what services the representatives for the proposed class are willing to commit to perform on behalf of the class members.  I see no such commitment in the documents submitted in support of the motion for class certification, and before I approve any class action(s) I want to be certain that the members of the proposed class will have a level of representation that is adequate to allow meaningful participation in the proposed settlement procedure.

4. **Burden of Proof in Arbitration Proceedings**.  I am interested in knowing the parties' position with respect to the allocation of the burden of proof in those cases where both wind and water contribute to a claimant's damages, and I am interested in how the parties propose to deal with cases in which wind damage and water damage cannot be segregated based on the evidence now available.

5. **The Mississippi Katrina Guideline Tool (MKRGT)**.  The MKRGT is a key component of the proposed settlement.  The grid established by the MKRGT, if it is ultimately approved, will in all likelihood, become the de facto standard for all similar insurance settlements that the Court may ultimately sanction.  Thus, it is of utmost importance that the figures used in this grid be fair and reasonable in light of the competing interests of the parties and the comparative benefits the parties will derive from establishing and following the proposed settlement procedure.  The parties should be prepared to explain to the Court how the figures on this grid were calculated, and the parties should be prepared to offer evidence that will support a finding that the proposed figures are fair and reasonable.

6. **Guaranteed Minimum Payments**.  The MKRGT provides a guaranteed minimum payment for only one of the five claims categories established for the grid.  The parties have represented to the Court that this guarantee will enable a claimant in a "slab case" to collect 50% of his coverage.  I do not understand how this calculation has been made, and I want the parties to be prepared to explain this calculation to me.  I am also struck by the disparity in the numbers inside the grid for people who have only a

       slab and pilings, who are guaranteed a 35% payment for their structures coverage, compared with other claimants who also sustained a total loss but who receive no guarantee at all. I believe that the ultimate key to the success of the proposed settlement procedure will be the minimum guarantees State Farm is willing to offer the class members to induce them to participate in the settlement process. In the absence of substantial guarantees that are reasonably related to the level of damage to the insured property, I see little inducement for the class members to forego their potential extra-contractual claims and the procedural rights they have in the process of litigation. Thus, I would like to hear from the parties on this issue.

7. **Offset for Flood Insurance and Other Insurance Collected**. If the claims that fall within the proposed settlement class are similar to the claims in litigation, there will be both class members who had no flood insurance and class members who have collected flood insurance. For the class members who have collected flood insurance, State Farm will be entitled to take a credit for the amount collected against the total value of the insured property, in accordance with my prior ruling in *Tejedor v. State Farm*, Civil Action No. 1:05cv679. The proposed settlement agreement appears to me to go further than this and allow a dollar for dollar offset of State Farm's limits of coverage by the amounts the claimants have collected from other insurance policies. I want to hear from the parties concerning this provision, and I am interested in the parties' views of the fairness of this provision in cases where the claimants property was under-insured, i.e., in cases where the value of the insured property may equal or exceed the combined limits of all insurance policies covering the property.

8. **Re-evaluation of Claims**. The parties have represented to the Court that one of the greatest advantages that will accrue to the members of the class is State Farm's re-evaluation of claims. The proposed settlement contains a commitment by State Farm to have a new adjustor re-evaluate the evidence concerning a claim, but that commitment will provide no benefit to the class member in cases where State Farm's new adjustor concurs with the judgment of the first adjustor. Indeed, if the two adjustors are looking at the same evidence, and if they are applying the same standards to evaluate the claim, they should reach roughly the same conclusion in almost every case. I am interested in hearing from the parties on this issue, and I am particularly interested in whether State Farm is willing to make any commitment that would result in an increase in the amount it is willing to offer a claimant in those instances where there is no new evidence to be taken into consideration. Over a year has now elapsed since these claims were originally adjusted, and I expect that the submission of new evidence will be the exception from the norm. I am

       interested in knowing what result the parties expect when these cases are re-evaluated without the submission of new or additional evidence.

9. **Simplicity**. The proposed settlement procedure is very complex. The benefit of establishing an alternative dispute resolution process, whether by mediation in the Court's existing program, arbitration under the parties' proposed settlement, or an alternative procedure established by the Court, is that it will reduce the transactional costs and the time necessary to resolve a disputed claim. To the extent such a procedure works, it is of substantial benefit to all the parties who participate in the process. But these benefits are in inverse proportion to the complexity of the procedure. I am interested in hearing from the parties on how any proposed procedure can be streamlined and simplified to best accomplish the purposes for which this procedure is being established.

10. **Exclusivity**. I realize that the proposed settlement is intended to cover a specific group of claimants and potential claimants. The class defined in the proposed settlement does not affect cases in litigation, except for a provision allowing a litigant to opt-in to the procedure. The proposed class also excludes policyholders who have resolved their claims by mediation and signed releases in favor of State Farm. The Court received a number of comments from individuals who have negotiated a settlement through mediation and who believe the payments they accepted were not fairly calculated or may have been calculated under an inappropriate legal standard. This is a very difficult issue for me, because the Court wants to support finality in the settlement process, particularly the mediation process established by the Insurance Commissioner, without leaving the perception among the settling claimants that they have unfairly suffered financially or legally because they chose to participate in the mediation process early on. I want to hear from the parties on how best to balance these interests in the context of the proposed settlement. I am also interested in any ideas the parties may have that would make the proposed procedure attractive to those State Farm policy holders who are presently in litigation.

     As I indicated in my order of January 26, 2007, I have a number of concerns related to the administration of the settlement procedure. At this time, I believe it would be premature to attempt to deal with these procedural considerations. Unless the parties can submit a proposed settlement agreement that is based on substantive provisions the Court can approve, the procedural issues will be moot.

     I would like nothing more than to approve a settlement procedure that is fair, balanced, and reasonable. In order to succeed, the procedure must also be attractive to the parties, and if the procedure is perceived as one that is fair, reasonable, and balanced, there will be many willing participants. Ideally, this settlement should be

sound enough in substance to resolve some of the claims that are in litigation as well as the claims that have not yet been filed.

The Court has a duty to approve a class action settlement only when it is satisfied that the settlement is fair, reasonable, and balanced. This is as true in the context of a proposed settlement class as it is with respect to a class that will be engaged in litigation. The Court has previously considered proposed class remedies and is presently re-considering an earlier denial of certification for a litigation class. It is not the proper role of the Court to undertake negotiations with or on behalf of any party, and I may only properly consider proposals that are actually submitted and supported by adequate evidence in accordance with the procedural rules of court. The purpose of this hearing is to invite the parties' attention to the areas of concern, support good faith efforts to address these concerns, and allow the parties and the potential class members who may be affected by this proposed settlement class to express their concerns. The parties may ultimately fail in their efforts to resolve the issues I have raised, and that result is preferable to approval of a procedure that does not yield a result that is fair, balanced, and reasonable. In all events, the Court will continue to entertain the suggestions and procedural efforts of all interested parties who are striving to reach a fair, reasonable, and balanced procedure that will speed the ultimate resolution of these disputes.

The proposed settlement will affect a large number of people, as the parties have indicated in their public comments. I believe those individuals who may be affected by this settlement should have an opportunity to express their views on the substance of the proposal. Any interested party who is potentially a member of the proposed class, including parties presently in litigation against State Farm and parties who have reached mediated settlements with State Farm, may therefore apply for leave to express his or her views on the proposed settlement at this hearing by filing a motion in this case, in the form attached to this order, without a supporting memorandum, on or before February 23, 2007. To the extent that it is practical, I will grant leave to as many of these applicants as possible in order to allow them to express their opinions and concerns, to the extent these comments are not repetitive of the comments and concerns expressed by the parties or by other applicants.

**SO ORDERED** this 8th day of February, 2007.

s/ *L. T. Senter, Jr.*
L. T. Senter, Jr.
Senior Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DENNIS R. and S. IMANI WOULLARD**                                               **PLAINTIFFS**

**V.**                                                     **CIVIL ACTION NO.1:06CV001 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY**                                **DEFENDANT**

**Motion for Leave To Participate in Hearing**

The undersigned property owner or the undersigned representative hereby moves the Court for leave to participate in the Hearing on Issues Related to Certification of a Settlement Class scheduled for Wednesday, February, 28, 2007.

The undersigned or the representative certifies that:

1.  He (or she) is an insured under a property insurance policy issued by State Farm Fire and Casualty Company;

2.  His (or her) insurance policy was in force at the time of Hurricane Katrina; and

3.  The insured property was damaged during Hurricane Katrina.

**SO CERTIFIED** this _____ day of February, 2007.